IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

CATHERINE PUGLISI,              )
                                )
               Plaintiff,       )
                                )
     v.                         )     No. 05 C 6592
                                )
CENTERPOINT PROPERTIES,         )
                                )
               Defendant.       )

                   MEMORANDUM OPINION AND ORDER

    On February 13, 2008 this Court issued its memorandum opinion and order addressing the motions in limine that had been filed by plaintiff Catherine Puglisi ("Puglisi") and responded to by her ex-employer CenterPoint Properties Trust ("CenterPoint") in this Title VII case. As forecast there, this opinion will perform the same task as to CenterPoint's motions in limine, responded to in turn by Puglisi.

    CenterPoint's motion to bar "expert" testimony[1] (Dkt. 90)

---

[1] By now litigants should be aware that the label "expert" (though retained in court rules) is out of favor in jury cases, with witnesses being referred to instead as "opinion witnesses"--see the year 2000 Advisory Committee Note to Fed. R. Evid. ("Rule") 702, of which this Court confesses that Professor Dan Capra (as official reporter to the Advisory Committee on the Rules of Evidence) and this Court (as then heading the Advisory Committee's subcommittee tasked with the revision of Rules 701, 702 and 703) were the principal drafters. See also Civil Jury Instruction 1.21 of the instructions prepared by the Committee on Pattern Civil Jury Instructions of the Seventh Circuit. There is indeed some irony in CenterPoint's next-discussed insistence on Puglisi's compliance with the distinctions marked out by the amended version of Fed. R. Civ. P. 26(a)(2), while CenterPoint's counsel is equally inattentive to provisions in the Advisory Committee Note that have likewise been in effect for a number of years.

has been responded to by Puglisi Dkt. 109. In that respect Puglisi reflects an all-too-common misunderstanding of the status of treating physicians, who need not provide a report under Rule 26(a)(2)(B)[2] but who nevertheless must be disclosed as opinion witnesses under Rule 26(a)(2)(A). Fully four years have elapsed since our Court of Appeals meticulously described that distinction in Musser v. Gentiva Health Servs., 356 F.3d 751, 756-58 (7th Cir. 2004). Yet having done so, and having upheld the exclusion of testimony from nondesignated professional witnesses under the circumstances of that case, the Court of Appeals concluded its discussion in this fashion (id. at 759-60):

> In affirming this judgment, we are mindful of our warning that "[i]n the normal course of events, justice is dispensed by the hearing of cases on their merits." Salgado, 150 F.3d at 740 (quoting Schilling v. Walworth County Park and Planning Comm'n, 805 F.2d 272, 275 (7th Cir. 1986)). We do not hold that a district court should always exclude evidence in similar factual scenarios; in fact, well-reasoned cases have come to the opposite result. See Brandon v. Village of Maywood, 179 F.Supp.2d 847, 860 (N.D. Ill. 2001); Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co., 138 F.Supp.2d 1088, 1094-95 (N.D. Ill. 2001). We urge district courts to carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative.

Musser upheld the exclusion of testimony in the context of a

---

[2] No confusion should be engendered by the use of the generic term "Rule" as a shorthand reference for both the Federal Rules of Evidence and the Federal Rules of Civil Procedure--their numbers are so different that all federal practitioners are able at a glance to see which set of Rules is being referred to.

2

summary judgment motion with a trial date in the near offing. It distinguished the situation in Sherrod v. Lingle, 223 F.3d 605, 613 (7th Cir. 2000), which had reversed a comparable exclusion of medical testimony in a different factual matrix. In this instance, this Court sees no harm in following Musser's counsel by denying the motion, allowing CenterPoint to redepose (or in one instance to depose) the opinion witnesses at an early date, while at the same time imposing an alternative sanction under which Puglisi must bear the incremental cost of the depositions if the treating physicians are indeed intended to opine (as might be expected) as to their diagnoses or other matters coming within the ken of opinion testimony under Rule 26(a)(2)(A).

CenterPoint's next motion, to exclude evidence about settlement negotiations and other attempts to compromise (Dkt. 91), has been responded to by Puglisi Dkt. 110. CenterPoint of course points to Rule 408, which reflects a proper concern that such evidence might be improperly construed as an admission of liability. In response Puglisi confirms that she has no intention to introduce into evidence any settlement discussions that took place after she had retained an attorney and had put CenterPoint on notice of that representation, but she hopes to testify about a general release that CenterPoint sought to obtain from her within a few days after she was fired and before she had retained counsel. Zurich Am. Ins. Co. v. Watts Indus., Inc., 417

3

F.3d 682, 689 (7th Cir. 2005) and cases cited there, as well as an opinion by this Court cited by Puglisi (<u>Strauch v. Am. Coll. of Surgeons</u>, No. 02 C 3314, 2004 WL 524442, at *6 (N.D. Ill. Feb. 19), exemplify the caselaw that allows such evidence when offered for another purpose (something specifically permitted by the Rule itself). That "another purpose" exception applies here, and any potential harm to CenterPoint through such admission can be avoided by an appropriate restrictive jury instruction. CenterPoint's motion is denied.

Next, CenterPoint's motion to exclude evidence about liability insurance (Dkt. 92) is unopposed in Puglisi's response (Dkt. 114). Although Puglisi's counsel asserts that her lack of intention to offer any such evidence or argument should result in denial of the motion as moot, the more appropriate disposition is to grant the motion, and this Court so orders.

CenterPoint's next motion, to bar Puglisi's testimony that she suffers from depression (Dkt. 93) has already been dealt with in this Court's January 15, 2008 memorandum order. Nothing further need be said here.

CenterPoint's motion to bar testimony by four designated witnesses (Dkt. 94) has been responded to by Puglisi Dkt. 111. It seems from the parties' submissions that Puglisi wants to adduce the testimony of those four fellow employees to counter the attacks on her that CenterPoint had signaled it was going to

4

make, particularly via some proposed evidence that this Court has barred in its recent ruling on Puglisi's motions in limine--a sort of "sauce for the goose" effort on Puglisi's part. But quite apart from this Court's having earlier blocked CenterPoint's efforts in that regard, it is true in any event that evaluations of an employee by fellow employees who are not in the decisionmaker chain are typically excluded in cases such as this. This Court grants CenterPoint's motion to the extent that Puglisi would seek to adduce opinions about her and about her performance (see, e.g., Rule 404(a))--but no view is of course expressed here as to whether one or more of the challenged witnesses might be in a position to offer admissible rebuttal to any evidence introduced by CenterPoint during its case in chief (or perhaps opened up by CenterPoint's cross examination of other Puglisi witnesses).

    Next, CenterPoint's motion to exclude Puglisi's proposed Exs. 5-8 and 16 (Dkt. 95) has been responded to by Puglisi in Dkt. 112. In part the motion addresses proposed exhibits linked up with the prospective Puglisi witnesses referred to in the preceding paragraph, and some of the proposed exhibits are responsive to the regrettable efforts of CenterPoint to tarnish Puglisi overbroadly--efforts that this Court has sought to scotch by its recent rulings on some of Puglisi's motions in limine. This Court's review leads to the following rulings:

1. Proposed Ex. 5 is barred.

2. Proposed Ex. 6 is a rave review of Puglisi's performance by CenterPoint's then Chief Executive Officer John Gates in May 2001. It frankly ill behooves CenterPoint to seek to bar introduction of that exhibit (on the otherwise proper ground that Gates was not part of the decisionmaking process in 2005) when CenterPoint has itself sought to dredge up a previously undiscovered write-up going back to 1999 to tar Puglisi with its contents. Here the short answer is that proposed Ex. 6 will be barred unless CenterPoint somehow seeks to muddy Puglisi up as a consistently bad performer.

3. Proposed Ex. 7 is an October 2003 letter from CenterPoint's President Michael Mullen that also provided a glowing reference ("Cathy has become one of our most valuable assets. She is friendly, outgoing and a joy to work with"), this time in support of the proposed adoption of a child by Puglisi and her husband. What was said as to proposed Ex. 6 applies here with equal force.

4. Proposed Ex. 8 is a similar letter in support of the hoped-for adoption, this time written by one of the four fellow employees mentioned in the preceding motion in limine. For the same reason that in part barred that witness' testimony, that exhibit will not be admitted.

> 5. Proposed Ex. 16 comprises several notes written to Puglisi by some fellow employees and her lawyers. They do not meet the test for admissibility, and CenterPoint's motion to exclude them is granted.

One qualification as to proposed Exs. 6 and 7 should be noted. Puglisi argues persuasively that the impact on her of the firing, particularly as to her claims of emotional distress and other intangible harms, was exacerbated by the contrast between the praise she had earlier received from CenterPoint's top management and Hood's termination of her as an assertedly deficient employee. That contention--which has obvious relevance as to claimed damages--has force, and this Court is normally disinclined to bifurcate trials between liability and damages in this area. Some further discussion with counsel in advance of trial may be needed on this score.

Finally, CenterPoint's motion to exclude Puglisi's proposed Exs. 22-31 (Dkt. 96 and 97) has been responded to by Puglisi Dkt. 113. Those exhibits relate to another complaint by a female employee at CenterPoint and the handling of that complaint by Hood and CenterPoint's General Counsel Dan Hemmer ("Hemmer"). One ground advanced by Puglisi's counsel for the admissibility of those exhibits--to refute a possible defense by CenterPoint to Puglisi's grievance on the ground that it had exercised reasonable care to prevent and promptly to correct any sexually

7

harassing behavior--has been eliminated because of this Court's ruling as to the unavailability of the Faragher-Ellerth defense (see, e.g., the discussion in Jackson v. County of Racine, 474 F.3d 493, 500-01 (7th Cir. 2007)). As for the other asserted ground for admissibility--to show that CenterPoint "was loath to recognize even the most obvious complaint of sexual harassment for what it was" and that CenterPoint "went to great lengths to avoid classifying a complaint as one of sexual harassment" (Puglisi's response at 2), the difficulty is that Hood's initial July 27, 2005 report of the employee's own complaint--though replete with a description of what would plainly qualify as sexual harassment--reflected the complaining employee's own preferential "state[ment] that she wants the professionalism addressed as the issue but not a sexual harassment complaint." In light of that, Hood's report went on to state that she and counsel Hemmer "would talk to Joe [the target of the grievance] about the comments he has made in the past in relation to sexual material, but that we would address the matter relating to his non-professionalism and intimidating behavior as the overall issue."  Under those circumstances, CenterPoint's motion is granted.

## Conclusion

CenterPoint's motions as advanced in Dkt. 92, 94, 95 and 97 are granted, some on a conditional basis as discussed here.  Its

motions asserted in Dkt. 90 and 91 are granted.  Its motion in

Dkt. 93 has previously been ruled on.

                                                  */s/ Milton I. Shadur*
                              _____
                              Milton I. Shadur
                              Senior United States District Judge

Date:  February 15, 2008